UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


KEVIN J. MILLER,

              Petitioner,

vs.                             Case No. 3:13-cv-736-J-39JRK

SECRETARY, DOC, et al.,

              Respondents.

_____

**ORDER**

**I. STATUS**

Petitioner Kevin J. Miller is proceeding on a *pro se* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody (Petition) (Doc. 1). He challenges his 2006 state court (Duval County) conviction for attempted felony murder and robbery.[1] <u>Id</u>. at 1.

Respondents' filed an Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Response) (Doc. 12) and Exhibits (Doc. 12).[2] Petitioner submitted a Reply in

---

[1] After originally sentencing Petitioner to twenty-five years for both the attempted felony murder and the armed robbery charges, the court reduced the armed robbery conviction to simple robbery and resented Petitioner to fifteen years on that count.

[2] With respect to the Petition, the Court will reference the page numbers assigned through the electronic docketing system. The Court will refer to the Exhibits (Doc. 12) as "Ex." Where

Opposition to Respondents' Answer (Reply) (Doc. 13). See Order (Doc. 7). Upon review, no evidentiary proceedings are required in this Court.

## II. STANDARD OF REVIEW

In this case, the Court will analyze Petitioner's two claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA). "By its terms [28 U.S.C.] § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to th[re]e exceptions." Harrington v. Richter, 562 U.S. 86, 98 (2011). The three exceptions referenced in Harrington are: (1) the state court's decision was contrary to clearly established federal law; or (2) there was an unreasonable application of clearly established federal law; or (3) the decision was based on an unreasonable determination of the facts. Id. at 100.

Of importance to this Court's review, there is a presumption of correctness of state courts' factual findings unless rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Also of import, this presumption of correctness applies to the factual determinations of both trial and appellate courts. See Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003).

---

provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit. Otherwise, the page number on the particular document will be referenced.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims he received the ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.  In order to prevail on this Sixth Amendment claim, he must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

With respect to an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, a petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985).  Of note, ineffective assistance of counsel may also require that a plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension.  See id. at 56 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)) (noting that the "longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'").

This Court recognizes that,

in a post conviction challenge to a guilty
plea:

> [T]he representations of the
> defendant, his lawyer, and the
> prosecutor at [the plea] hearing, as
> well as any findings made by the
> judge accepting the plea, constitute
> a formidable barrier in any
> subsequent collateral proceedings.
> Solemn declarations in open court
> carry a strong presumption of
> verity. The subsequent presentation
> of conclusory allegations
> unsupported by specifics is subject
> to summary dismissal, as are
> contentions that in the face of the
> record are wholly incredible.
>
> Blackledge v. Allison, 431 U.S. 63, 73–74, 97
> S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977)
> (citations omitted); see also United States v.
> Gonzalez-Mercado, 808 F.2d 796, 799–800 and n.
> 8 (11th Cir. 1987) (while not insurmountable,
> there is a strong presumption that statements
> made during a plea colloquy are true, citing
> Blackledge and other cases).

Bryant v. McNeil, No. 4:09CV22-SPM/WCS, 2011 WL 2446370, at *2
(N.D. Fla. May 17, 2011) (Report and Recommendation) (Not Reported
in F.Supp.2d), report and recommendation adopted by Bryant v.
McNeil, No. 4:09CV22-SPM/WCS, 2011 WL 2434087 (N.D. Fla. June 16,
2011).

## IV.  EXHAUSTION AND PROCEDURAL DEFAULT

In addressing the question of exhaustion, the Court must ask
whether Petitioner's claim was raised in the state court
proceedings and whether the state court was alerted to the federal
nature of the claim:

Before seeking § 2254 habeas relief in federal court, a petitioner must exhaust all state court remedies available for challenging his conviction. See 28 U.S.C. § 2254(b), (c). For a federal claim to be exhausted, the petitioner must have "fairly presented [it] to the state courts." McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005). The Supreme Court has suggested that a litigant could do so by including in his claim before the state appellate court "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). The Court's guidance in Baldwin "must be applied with common sense and in light of the purpose underlying the exhaustion requirement"—namely, giving the state courts "a meaningful opportunity" to address the federal claim. McNair, 416 F.3d at 1302. Thus, a petitioner could not satisfy the exhaustion requirement merely by presenting the state court with "all the facts necessary to support the claim," or by making a "somewhat similar state-law claim." Kelley, 377 F.3d at 1343-44. Rather, he must make his claims in a manner that provides the state courts with "the opportunity to apply controlling legal principles to the facts bearing upon (his) [federal] constitutional claim." Id. at 1344 (quotation omitted).

Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-52 (11th Cir. 2012), cert. denied, 133 S.Ct. 875 (2013).

There are prerequisites to a federal habeas review. As such, the Court must also be mindful of the doctrine of procedural default:

Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect

necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman, supra, at 747-748, 111 S.Ct. 2546; Sykes, supra, at 84-85, 97 S.Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. ----, ----, 131 S.Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. ----, ----, 130 S.Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S.Ct. 2546.

Martinez v. Ryan, 132 S.Ct. 1309, 1316 (2012).

Of note, procedural defaults may be excused under certain circumstances; "[a] petitioner who fails to exhaust his claim is procedurally barred from pursuing that claim on habeas review in federal court unless he shows either cause for and actual prejudice from the default or a fundamental miscarriage of justice from applying the default." Lucas, 682 F.3d at 1353 (citing Bailey v. Nagle, 172 F.3d 1299, 1306 (11th Cir. 1999) (per curiam)). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather

than mere "'legal' innocence." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002).

## V.  PROCEDURAL HISTORY

The Court, in order to provide context for the two grounds at issue, presents a brief summary of the history of the case. Petitioner was charged by a Third Amended Information with attempted felony murder, armed robbery, and leaving the scene of a crash involving injury.  Ex. D at 64-65.  On March 6, 2006, Petitioner entered a Plea of No Contest and Negotiated Sentence.[3] <u>Id</u>. at 78-79.  The terms included a plea of no contest to counts one and two, straight up to the court, with the state agreeing to nolle pros count three.  <u>Id</u>. at 78.  In addition to Petitioner, the defense attorney, the prosecutor, and the judge signed the plea form.  Underneath the judge's signature, it states:

> My signature as Judge of this Court is certification that I have discussed this plea agreement with Defendant and Defendant's attorney in open Court on this date and have asked Defendant questions, considered Defendant's responses, and observed Defendant's demeanor.  I find that Defendant has the intelligence to comprehend these constitutional rights, the terms of this plea agreement, the contents of this written agreement, and these proceedings.  I further find that Defendant has entered this plea freely and voluntarily and is not under the influence of any disability, substance, drug, or condition which would interfere with

---

[3] Although the plea form is dated March 3, 2006, the plea occurred on March 6, 2006, the filing date of the document.

> Defendant's ability to understand and
> appreciate the terms of this plea agreement
> and its consequences.

<u>Id</u>. at 79.

On March 6, 2006, the court swore Petitioner in after defense counsel announced that the state agreed to nolle pros count three, allowing the Petitioner to plead straight up to counts one and two. Ex. E at 14.  The court told Petitioner that his counsel entered a guilty plea to count one, attempted first degree felony murder, punishable by life, and to count two, armed robbery with a deadly weapon (a motor vehicle), also punishable by life imprisonment. <u>Id</u>. at 15-16.  Petitioner confirmed that he agreed to plead guilty and the pleas were entered with his knowledge and consent.  <u>Id</u>. at 16-17.  The court advised Petitioner of the rights he was giving up by pleading to the offenses.  <u>Id</u>. at 17.  The court clarified that even though they were no contest pleas, they would carry the same consequences.  <u>Id</u>. at 18.  Petitioner responded that he understood. <u>Id</u>. at 19.  Petitioner responded affirmatively that he was pleading no contest because he believed it to be in his best interest.  <u>Id</u>. He also stated that no one forced him to plead no contest against his will.  <u>Id</u>.  Petitioner confirmed that he read and understood the form and signed it.  <u>Id</u>.  He said he completed tenth grade and could read and write.  <u>Id</u>.

The court explained to Petitioner that he did not have a specific negotiated sentence.  <u>Id</u>. at 20.  The court also informed

Petitioner that the guidelines were nine years to life in prison. Id. The court then asked,

> [h]as anyone told you that you will receive a specific sentence? Has anyone told you it is going to be two years, three years, four years, 12 years or anything of that nature? It will be a lawful sentence is the only thing that can be stated at this point, do you understand that?

Id. Petitioner responded yes. Id. The court advised Petitioner that he would have a sentencing hearing in the future and his sentence would be determined at that time, and Petitioner confirmed that he understood. Id. at 20-21.

The court asked Petitioner if he had any questions, and he responded no. Id. at 21. The court reiterated, "[n]ow Mr. Miller, you have entered no contest pleas to two felonies punishable by up to life in prison, do you understand that?" Id. Petitioner again said yes. The court asked Petitioner if he wanted to enter the no contest pleas as described, and Petitioner said yes. Id. Petitioner said he had no complaints about his attorneys bearing on his decision to enter the plea. Id. at 22.

The prosecutor provided the factual basis for the plea:

> If this case had proceed [sic] to trial, the state would have been prepared to prove that on July 15, 2004, in the County of Duval and State of Florida, specifically Mary Williams, the victim in this case, would have testified she was walking on the street when the defendant had driven a vehicle described as a white Ford Explorer with a tan stripe.
>
> The vehicle pulled up next to her and the passenger reached out and grabbed her purse.

> A struggle began.  And Ms. Williams was --
> ended up on the ground.  The passenger began
> to beat and kick Ms. Williams for her purse.
>
> Several witnesses, Deborah Newkirk,
> Angela Brazelle and Geraldine Lyons were
> outside a house about two or three houses
> down.  They observed that beating.
>
> They also observed the defendant, Kevin
> Miller, exit the driver's side, come around to
> the passenger's side and kick and beat Ms.
> Williams as well.
>
> Kevin Miller then returned back into the
> driver's seat and drove off.  When he drove
> off, Ms. Williams still had her purse -- a
> hold of her purse due to her purse being over
> her shoulder.  She was pulled under into [sic]
> the vehicle, but her legs were caught in the
> wheels and were subsequently run over.
>
> Her injuries were a collapsed lung, a
> broken pelvis, left leg fractures in several
> places.  She was in a comma [sic] for about a
> month.

Id. at 22-24.

The prosecutor provided additional facts and stated that Petitioner's actions were contrary to the Florida Statutes.  Id. at 24-25.  Of note, the court inquired as to whether the state was going to rely on some Williams rule evidence as to the question of Petitioner's knowledge as to what his passenger was going to do, and the prosecutor responded that had the case proceeded to trial and the court granted the admission of the Williams rule evidence, evidence would have been presented regarding two robberies from June 8 and July 9, with Petitioner being identified as the robber of purses by two victims.  Id. at 25.

- 10 -

The court noted, to the extent that it may have some bearing on the case, he had reviewed the motion and the case law, and he would have allowed the state to use the Williams rule evidence because the crimes were sufficiently similar, the evidence would show the absence of mistake, and it would also show knowledge on the part of Petitioner with respect to the purse snatching.  Id. Defense counsel announced no legal exception to the factual basis for the plea, but stated that the defense disagreed with the facts as presented by the state.[4]  Id. at 26.

The court found a factual basis for the pleas as to counts one and two, found that Petitioner freely and voluntarily entered his pleas "with a full understanding of the nature of the charges, the maximum and minimum possible sentences herein and the consequences of both guilty pleas[.]" Id.  The court accepted the pleas and deferred the matter for sentencing.  Id.

On April 6, 2006, the Court briefly summarized the state of the case.

> Okay.  Let's review where we stand.  Mr. Miller was charged in a third amended information with the charges of attempted felony murder, armed robbery and leaving the scene of a crash involving injuries.
>
> And on March 6, 2006, Mr. Miller entered pleas of no contest to Counts 1 and 2.  And the state agreed to nol pros or dismiss or drop Count 3, . . . .

---

[4] Petitioner asserts that his co-defendant "did everything." Petition at 17.

Ex. D at 181.

The court inquired as to whether both counts were punishable by life in prison, and the prosecutor confirmed that that was the case. Id. at 183. The court then inquired as to whether there was an agreement as to a range, and Petitioner's counsel responded no, and then noted that "the guidelines are nine years." Id. The court asked the prosecutor if the state agreed that the guidelines are nine years to life, and the prosecutor responded in the affirmative. Id. The court reiterated the range of the possible sentence: "[n]ine years to life, okay." Id.

The court allowed Petitioner to present his witnesses in mitigation, and he did so. Id. at 184-205. The state presented witnesses, including the victim's husband. He testified about his wife's injuries, surgeries and condition. Id. at 217-24. He explained that after the incident, she was in a coma and in critical condition. Id. at 219-20. She had five or six surgeries on her leg. Id. at 221. In addition, the victim, Mary Williams, submitted a letter to the court, which the prosecutor read aloud. Id. at 225-27. In her letter, the victim explained that when she arrived at the hospital she was in a coma with a collapsed lung, she had a concussion, a pinched nerve in her neck, a broken pelvis, and contusions over her body. Id. at 225. The doctors thought she may live six hours. Id. She survived and spent five months in the hospital. Id. She described her disabilities due to her injuries and referenced the multiple surgeries she had to have due to her

injuries.  <u>Id</u>. at 226.  Finally, she explained the impact on her three children who witnessed the incident on July 15, 2004.  <u>Id</u>. at 226-27.

The prosecutor argued that Petitioner's act deserved a life sentence, but "since he pled, the term of years the state feels that nothing less than 25 years would be acceptable."  <u>Id</u>. at 230. The prosecutor also reminded the court that Petitioner faced life in prison.  <u>Id</u>.  The court announced:

> Okay.  Mr. Miller, based on your previously entered and accepted guilty pleas to Counts 1 and 2, at this time, I will adjudicate you to be guilty of Counts 1 and 2.
>
> It is the judgment and sentence of the Court that you serve a term of 25 years in the custody of the Department of Corrections.
>
> Those sentences are to be served concurrently.

<u>Id</u>. at 232.

The court entered the judgment and sentence on April 6, 2006. <u>Id</u>. at 82-87.  Petitioner appealed.  <u>Id</u>. at 101.  On June 28, 2006, the First District Court of Appeal dismissed the appeal for failure to pay the filing fee.  Ex. F; Ex. G.

On April 11, 2006, Plaintiff filed a motion to reduce sentence pursuant to Rule 3.800(c), Fla. R. Crim. P.  Ex. D at 91-92.  On April 12, 2006, the court denied the motion.  <u>Id</u>. at 93.

Through counsel, on August 15, 2006, Petitioner filed a motion to withdraw his plea.  <u>Id</u>. at 102-11.  The court conducted a hearing on the motion.  <u>Id</u>. at 235-305.  On December 15, 2006, the

court denied the motion.  <u>Id</u>. at 112.  Petitioner appealed.  <u>Id</u>. at 113.  Petitioner's appellate counsel filed an Anders brief.[5]  Ex. H.  Petitioner filed a *pro se* brief.  Ex. I.  Petitioner's appellate counsel filed an amended initial brief raising one ground: the trial court erred in denying a *pro se* motion to correct an illegal sentence or sentencing error.  Ex. J.  In the amended brief, counsel referenced Petitioner's pro se Motion to Correct an Illegal Sentence or Sentencing Error asserting the conviction and sentence for armed robbery was illegal.  <u>Id</u>. at 6-7.  <u>See</u> Ex. I at 1-9, Motion to Correct an Illegal Sentence or Sentencing Error. The trial court failed to rule on the motion to correct and it was deemed denied by law.  Ex. J at 7.  The appellate court ordered briefing on the issue, and in response, counsel filed an amended brief.  <u>Id</u>.  The state responded.  Ex. K.  Petitioner replied.  Ex. L.

The First District Court of Appeal, on July 31, 2008, reversed, holding the facts failed to support an armed robbery charge, as conceded to by the state, and citing <u>State v. Burris</u>, 875 So.2d 408 (Fla. 2004) (holding that the use of a motor vehicle cannot constitute carrying a weapon for purposes of an armed robbery charge).  Ex. M at 1.  The mandate issued on August 18, 2008.  Ex. N.  On remand, the trial court vacated the sentence as to count two, and resentenced Petitioner to a concurrent sentence

---

[5] <u>Anders v. California</u>, 386 U.S. 738 (1967).

of fifteen years imprisonment on count two.[6]   Ex. O; Ex. P.
Petitioner appealed, failed to pay the fee or properly establish
that he was a pauper, and on February 10, 2009, the First District
Court of Appeal dismissed the appeal.   Ex. R; Ex. S; Ex. T; Ex. U.
The appellate court denied rehearing and reinstatement.   Ex. V; Ex.
W; Ex. X; Ex. Y; Ex. Z.

On October 25, 2009, pursuant to the mailbox rule, Petitioner
filed a Rule 3.850 post conviction motion in the trial court.   Ex.
BB at 1-8.   On August 4, 2010, the trial court denied the Rule
3.850 motion, but granted relief on a construed motion to correct
sentencing error acknowledging that the re-recorded judgment should
reflect a conviction for simple robbery for count two, not armed
robbery.   Id. at 22-27.

Petitioner appealed.   Id. at 69.   The First District Court of
Appeal, on October 14, 2010, ordered a response as to why the
summary denial of Petitioner's first claim should not be reversed
and remanded.   Ex. CC.   The state responded.   Ex. DD.   On December
28, 2010, the First District Court of Appeal affirmed the denial of
ground two, but reversed and remanded on ground one for the trial
court to either attach portions of the record conclusively refuting
the claim, or hold an evidentiary hearing.   Ex. EE.   The mandate
issued on January 25, 2011.   Ex. FF.

---

[6] It should be noted that in the re-recorded Judgment, the
trial court failed to correct the judgment to reflect a conviction
for simple robbery.   Ex. O at 1.

On remand, the circuit court conducted an evidentiary hearing on May 17, 2011.  Ex. HH at 88-179.  Petitioner was represented by counsel at the hearing.  Id. at 89.  In a thorough decision, the court denied ground one.  Id. at 77-85.  Petitioner appealed.  Id. at 202.  Petitioner filed an appeal brief through counsel.  Ex. II. The state answered.  Ex. JJ.  On May 3, 2013, the First District Court of Appeal affirmed per curiam.  Ex. KK.  The mandate issued on May 29,2013.  Ex. LL.

## VI.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Ground One

Ground one of the Petition is a denial of effective assistance of counsel/involuntary plea claim.  Petition at 5.  In support of this ground, Petitioner claims his attorney was ineffective for misadvising him that there was no viable defense to armed robbery, and this misadvice prejudiced Petitioner because counsel also advised that, if Petitioner proceeded to trial, the jury would likely return a favorable verdict on the attempted felony murder count and an unfavorable verdict on the armed robbery count, resulting in a conviction punishable by life in prison, when such a sentence was precluded by case law as it was a simple robbery, not an armed robbery.  Petitioner claims that but for this misadvice, he would not have pleaded no contest and would have proceeded to trial.

After an evidentiary hearing, the circuit court denied this claim.  The First District Court of Appeal affirmed.  Certainly of

- 16 -

significance is the fact that the circuit court recognized the two-pronged _Strickland_ standard for reviewing claims of ineffective assistance of counsel. Ex. HH at 78-79. Also of import, the court relied on _Hill v. Lockhart_, and imparted that to satisfy the prejudice requirement in a guilty or no contest plea case, the defendant must show that there is a reasonable probability that, but for his counsel's errors, he would not have pled and would have insisted on going to trial. Ex. HH at 79.

In its decision, the circuit court first found that counsel did err by telling Petitioner that there was no viable defense to the charge of armed robbery. _Id_. at 80. The circuit court concluded that Petitioner satisfied the first prong of _Strickland_. Ex. HH at 81. The court did not, however, find that Petitioner satisfied the prejudice prong.

The court relied on Petitioner's testimony at the evidentiary hearing. At the hearing, the following transpired. Petitioner's counsel inquired:

> Q    And, in fact, did you ever tell Mr. Williams that you wanted to go to trial?
>
> A    Yes, ma'am.
>
> Q    And what was his response?
>
> A    His response was I was going to get a life sentence against one of those charges.
>
> Q    Now, did Mr. Williams ever tell you that it was possible that you could get a favorable verdict on the attempted felony murder charge?
>
> A    No, ma'am.

- 17 -

Id. at 108-109.

The court concluded that this testimony corroborated trial counsel's testimony that counsel thought the attempted felony murder charge was the state's best case. Id. at 82, 100. The court found that "both Defendant and Counsel have testified that Counsel did not advise Defendant, at the time of his plea, that he would probably be acquitted on the attempted felony murder charge." Id. at 82. Thus, at the time of his plea, Petitioner was facing a life sentence on the attempted felony murder charge, regardless of whether the second count was simple robbery or armed robbery. Upon consideration of these factors, the court concluded that the content of Petitioner and his counsel's testimony at the evidentiary hearing weakened Petitioner's claim, but it did not completely refute it. Id. As a result, the court referred to other portions of the record in order to make and support its ruling. Id.

The court relied on the post-sentencing hearing on Petitioner's motion to withdraw his plea. Id. A detailed explanation followed as to why Petitioner "would have still agreed to the plea agreement had the armed robbery charge been properly charged as simple robbery." Id. at 83. The court provided the following analysis:

> A sample scoresheet, properly charging simple robbery, reveals that the minimum of the guidelines sentence range would be reduced to 7.66 years. If Defendant agreed to the actual plea offer because he would rather serve the

> lower end of a sentencing range of 9.375 years to life than to go to trial and risk a conviction and life sentence on the armed robbery charge (assuming an acquittal on the attempted felony murder charge), he would surely have agreed to the possibility of receiving an even lower possible minimum sentence in a range of 7.66 years to life rather than to go to trial and risk a conviction and life sentence on attempted felony murder and either an acquittal or conviction on simple robbery, since 7.66 is less than 9.375.

Id.

Finally, the court noted that the state agreed to nolle pros the aggravated battery charge which reduced the minimum guidelines sentence to under ten years, making an open plea to the court more appealing. Id. at 84. The same appeal, if not more, would have existed if the aggravated robbery had been reduced to simple robbery. As a result, the circuit court held that, in considering the totality of the circumstances, Petitioner failed to show prejudice "because he failed to show that he would not have accepted the State's plea offer and proceeded to trial." Id.

In order to satisfy the prejudice prong of the two-part Strickland test in a plea case, Petitioner must show that there is a reasonable probability that, but for his counsel's error, he would not have pleaded guilty and would have insisted on proceeding to trial. See Hill v. Lockhart. The circuit court found that given the totality of the circumstances, there was no reasonable probability under the circumstances presented, that, but for counsel's misadvice, Petitioner would have insisted on going to

- 19 -

trial.    As  a  result,  the  Court  found  Petitioner  failed  to
demonstrate the required prejudice to meet the prejudice prong.

In order for a no contest plea to be constitutionally valid,
it must be made knowingly, intelligently, and voluntarily.  Pardue
v. Burton, 26 F.3d 1093, 1096 (11th Cir. 1994).  In reviewing  a
state court no contest plea, a federal habeas court looks only for
compliance with constitutional protections:

> This court has concluded that "[a] reviewing
> federal court may set aside a state court
> guilty plea only for failure to satisfy due
> process:  If a defendant understands the
> charges against him, understands the
> consequences of a guilty plea, and voluntarily
> chooses to plead guilty, without being coerced
> to do so, the guilty plea . . . will be upheld
> on federal review." Stano v. Dugger, 921 F.2d
> 1125, 1141 (11th Cir.) (en banc), cert.
> denied, ___ U.S. ___, 112 S.Ct. 116, 116 L.Ed.
> 2d 85 (1991).

Jones v. White, 992 F.2d 1548, 1556-57 (11th Cir.), cert. denied,
510 U.S. 967 (1993).

In  this  case,  Petitioner  has  not  shown  that  there  is  a
reasonable  probability  that,  but  for  counsel's  alleged  errors,
Petitioner  would  not  have  pleaded  no  contest  and  would  have
insisted on going to trial.  With regard to attempted felony murder
count,  Petitioner  was  facing  a  life  sentence.    Defense  counsel
thought  the  attempted  felony  murder  charge  was  the  state's  best
case.    Ex.  HH  at  100.    He  believed  that  Petitioner's  chance  of
getting  a  life  sentence  if  he  proceeded  to  trial  "was  very,  very
significant[.]"  Ex. D at 246.  Counsel attested that he concluded

that it was in his client's best interest to plead straight up to the court, recognizing that based on the state's case, Petitioner had, what counsel considered to be a slim chance, defined as less than ten percent, of prevailing at trial.  Id.

Petitioner has not shown prejudice, as Petitioner was facing substantial time.  He has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had given the assistance that Petitioner has alleged should have been provided.  Accordingly, Petitioner's ineffectiveness claim is without merit since he has not satisfied the prejudice prong pursuant to Hill.

Petitioner is not entitled to relief on ground one of the Petition, the claim of ineffective assistance of trial counsel resulting in an involuntary plea.[7] Deference, under AEDPA, should be given to the state court's decision.  Petitioner raised the issue in his Rule 3.850 motion, the trial court denied the motion, and the appellate court affirmed.  Ex. KK.  The state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland and Hill, or based on an unreasonable determination of the facts.  Ground one, Petitioner's claim of ineffective assistance of counsel resulting in an involuntary plea, is due to be denied.

---

[7] Petitioner waived any claims regarding the merits of his defense or prosecution when he entered his plea and any complaints he may have had about the state's underlying evidence.  Ex. E at 17, 22-26.

**Ground Two**

In his second ground, Petitioner claims that his attorney was constitutionally ineffective because he failed to object to the factual basis for attempted felony murder because it was predicated on the armed robbery, which was not an independent criminal act. Petition at 6.  Respondents contend that this ground is unexhausted and procedurally defaulted.  Response at 14.

In order for Petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S.Ct. 2639).  Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness."  Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S.Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir.), cert. denied, 528 U.S. 934 (1999).

Petitioner was certainly cognizant of the claim as he alleges that he discussed the issue with his trial attorney prior to the entry of the plea.  Petition at 17.  Petitioner also contends that during the plea proceeding, he again raised the matter with his defense attorney, whispering to his counsel that the causation and factual basis provided by the state did not satisfy the requirements for a separate conviction for attempted felony murder. Id. at 18.  Thus, Petitioner was well-aware of the nature of the

- 22 -

claim and could have included it in his post conviction motion, if he so desired.

Petitioner is apparently blaming the lack of counsel at the inception of his post conviction proceeding for his failure to raise the issue in his Rule 3.850 motion. Petition at 20-23. He urges this Court to find that the narrow exception provided for in Martinez v. Ryan, 132 S.Ct. 1309, 1320 (2012) is applicable to his situation because "he was unrepresented by counsel during his initial-review-collateral proceeding[.]" Petition at 23.

Upon review of the record, Petitioner may not have had representation at the inception of his post conviction proceeding, but he was represented by Mechelle Herrington, Esquire, and she appeared as his counsel at the Rule 3.850 evidentiary hearing. Ex. HH at 89. As noted by Respondents, since Petitioner had post conviction counsel, he could have asked her to evaluate and assess whether additional claims should be made during the post conviction proceeding. Response at 17. Apparently, he did not make this inquiry as he neither alleges or shows that such an inquiry was made. Id.

Petitioner has not alleged or demonstrated that Ms. Herrington's performance as post conviction counsel amounted to ineffective assistance of counsel. See Martinez v. Ryan, 132 S.Ct. at 1320 ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas

court from hearing a substantial claim of ineffective assistance of counsel at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.").

The trial court appointed counsel to represent Petitioner in his post conviction proceeding; therefore, this Court's inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted). The standard is reasonably effective counsel, not the perfect assistance of counsel. Petitioner has failed to show that Ms. Herrington's representation as post conviction counsel fell below an objective standard of reasonableness. Petitioner has also failed to show that there was a reasonable probability that the results of the post conviction proceeding would have been different but for the actions and/or omissions of Ms. Herrington.

This Court finds that ground two is unexhausted and procedurally defaulted. Petitioner has failed to show cause and prejudice or that a fundamental miscarriage of justice will result if the Court does not reach the merits of the claim. Although Petitioner claims that his procedural default should be excused,

- 24 -

relying on Martinez, Petitioner has failed to show that he falls within the narrow parameters of the ruling in Martinez, which recognized a narrow exception for ineffective assistance of counsel at initial-review collateral proceedings. As such, Petitioner has failed to establish cause for the procedural default of his claim of ineffective assistance of trial counsel raised in ground two of the Petition.

In the alternative, Respondents contend that this ground is moot based on the relief already provided by the state courts. Response at 14. Indeed, upon review, Petitioner's conviction for armed robbery has been reduced to simple robbery. In count one of the Third Amended Information, he was charged with, during the course of perpetrating a robbery, committing, aiding or abetting "an intentional act that was not an essential element of the Robbery" and that could but did not cause the death of the victim. Ex. D at 64. Upon review, there were intentional acts referenced in the factual basis for the plea that were not part of the essential elements of robbery: the beating of the victim, by both Petitioner and his co-defendant, and the running over the victim with a vehicle by the driver, Petitioner. As such, the state provided an adequate factual basis for the plea to attempted felony murder.

Respondents contend: "the First District has cured any deficiency by trial counsel when it, as a matter of Florida-law fundamental error, reversed Petitioner's armed robbery conviction,

for imposition of a lesser-included and legally permissible simple robbery sentence."[8]  Response at 18 (citations omitted).  Upon due consideration, the Court finds that the deficiency has been cured, the matter is moot, and Petitioner is not entitled to habeas relief.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The **Clerk of the Court** shall enter judgment accordingly and close this case.

3.   If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability.**[9]  Because this Court

---

[8]  In count two of the Third Amended Information, the armed robbery count, the state identified the motor vehicle as the deadly weapon.  Ex. D at 64.  The trial court, in denying the Rule 3.850 motion, noted that had Petitioner's claim of ineffective assistance of counsel raised in ground two of the motion not been procedurally defaulted, the claim "that the same use of force (the use of the automobile) may not be used to prove both Attempted Felony Murder and Armed Robbery" would have been dismissed as moot because the trial court had already reduced the armed robbery count to simple robbery.  Ex. BB at 25-26.

[9]  This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a

has determined that a certificate of appealability is not
warranted, the **Clerk** shall terminate from the pending motions
report any motion to proceed on appeal as a pauper that may be
filed in this case.  Such termination shall serve as a denial of
the motion.

   **DONE AND ORDERED** at Jacksonville, Florida, this 19th day of
November, 2015.

_____
BRIAN J. DAVIS
United States District Judge

sa 11/17
c:
Kevin J. Miller
Counsel of Record

_____

certificate of appealability.